**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

HARTFORD FIRE INSURANCE       :
COMPANY, as subrogee of Mary M. Martin    :
         :
         :
      v.          :       Civil No. CCB-17-0183
         :
         :
NINJA JUMP, INC., *et al.*       :
         :
         :

## MEMORANDUM

In 2016, a building in Maryland owned by Mary M. Martin ("Martin") suffered fire damage. Hartford Fire Insurance Company ("Hartford Fire"), which insured the building, compensated Martin for her losses and then initiated the present subrogation action against two defendants: Jumpy Bounce, LLC ("Jumpy Bounce"), which leased the building from Martin, and Ninja Jump, Inc. ("Ninja Jump"), which provided equipment to Jumpy Bounce. After Hartford Fire filed suit, Ninja Jump filed a crossclaim against Jumpy Bounce, claiming it is entitled to indemnification or, in the alternative, contribution. Now pending are two motions filed by Jumpy Bounce. First, Jumpy Bounce has filed a motion to dismiss or, in the alternative, for summary judgment with respect to Hartford Fire's claim against it; according to Jumpy Bounce, that subrogation claim is precluded by the terms of the lease it negotiated with Martin. Second, Jumpy Bounce has moved to dismiss Ninja Jump's crossclaim. No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the court will grant both of Jumpy Bounce's motions to dismiss, with prejudice.

# BACKGROUND

According to Hartford Fire's complaint, Martin owns a building at 98 Industry Lane, Forest Hill, Maryland. (Compl. ¶ 6, ECF No. 1). Martin leased the building to Jumpy Bounce, which used the building for an entertainment complex open to the public. (*Id.* ¶¶ 7–8). Jumpy Bounce purchased inflatable slides and obstacle courses from defendant Ninja Jump for use in the entertainment complex. (*Id.* ¶ 9). On September 9, 2016, a blower motor that Ninja Jump had sold to Jumpy Bounce for use with a particular slide and obstacle course caught fire, causing damage to the building. (*Id.* ¶¶ 10–12, 14). Hartford Fire, which insured both Martin and the building, paid Martin $630,915.53 to compensate for the damage. (*Id.* ¶ 17). Hartford Fire now brings a subrogation claim against Jumpy Bounce and Ninja Jump to recoup its losses caused by the fire and ensuing insurance claim. (*Id.* ¶¶ 16, 18).[1]

## A.  Jumpy Bounce

Hartford Fire claims Jumpy Bounce owed Martin a duty to exercise reasonable care while leasing the building and breached that duty by, *inter alia*, failing to periodically clean and service the blower motor, which Hartford Fire claims caused the fire damage. (*Id.* ¶¶ 19–23). Jumpy Bounce claims the lease precludes Hartford Fire from pursuing such a negligence claim, because the lease provides that Martin's insurance policy would be the sole source of funds to address the losses at issue here. (Mot. to Dismiss Compl. Mem. Law 1–2, ECF No. 14-1). The dispute between Hartford Fire and Jumpy Bounce thus centers on the specific terms of the lease.

---

[1] The doctrine of subrogation "is a legal fiction whereby an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person." *Bachmann v. Glazer & Glazer, Inc.*, 316 Md. 405, 412 (1989). The doctrine is "founded upon the equitable powers of the court," and its rationale is "to prevent the party primarily liable on the debt from being unjustly enriched when someone pays his debt." *Id.* "Ordinarily, in the insurance context, pursuant to a contract, the subrogee insurer is subrogated to the insured, against a party who has caused the insured's loss and for which the insurer has compensated its insured." *Poteet v. Sauter*, 136 Md. App. 383, 401–02 (2001).

The lease contains several provisions related to property insurance in general and fire insurance in particular. With respect to property insurance, the lease required Jumpy Bounce to pay, in addition to a base rental amount, a "triple net rate" consisting of a "proportionate share of the Property's annual expenses for real estate taxes, Landlord's property insurance and common area maintenance expenses." (Mot. to Dismiss Compl. Mem. Law, Ex. 2, Lease Agreement 4–5, ECF No. 14-2). With respect to property insurance, the original lease[2] estimated that Jumpy Bounce would pay nine cents per square foot of rented space each year to cover Martin's annual property insurance expenses. (*Id.*).[3] The lease also provides for a "reconciliation" of the "triple net rate" expenses each year after July 1. Pursuant to this reconciliation process, the "triple net rate" is adjusted annually to ensure it aligns with actual expenses. If the payments from Jumpy Bounce fail to cover its share of the "triple net rate" expenses, the lease mandates payment of the balance within 30 days. Similarly, if Jumpy Bounce overpaid, the lease mandates that this balance is "carried forward and included in the calculation of the adjusted Triple net rate." (*Id.*).

With respect to fire insurance, the lease separately states, "<u>Fire Insurance.</u> The Tenant agrees to do nothing to contravene the policy or policies of fire insurance by the Landlord on said property or to cause any increase in the rates of fire insurance for said Premises or property; in the event . . .  an increase in the rates of fire insurance is caused by an act on the part of the Tenant, then said increase in the fire insurance premium shall be paid by the said Tenant

---

[2] The lease was amended twice. The first amendment, dated October 31, 2013, reiterated that Jumpy Bounce "shall be responsible to pay a proportionate share of the Property's annual expenses for real estate taxes, Landlord's property insurance and common area maintenance expenses." With respect to property insurance, it estimated that Jumpy Bounce would pay eight cents per square foot. (Lease Agreement 34). The second amendment, dated May 25, 2016, reiterated that same language and did not alter the overall "triple net rate" of additional rent owed by Jumpy Bounce that was outlined in the first amendment. (*Id.* 36). Under both amendments, this additional rental amounted to $877.34.

[3] Elsewhere, the lease also reiterates that Jumpy Bounce "is to reimburse [Martin] . . . for its prorated share of the annual expenses for [Martin's] property insurance cost." (*Id.* 18).

promptly on demand by the Landlord and the Tenant agrees to pay said additional premium as rent during each year of this Lease." (*Id.* 10).

The lease also contains a section on abatement of rent in case of fire damage. First, that section states that, "[s]hould the Premises be damaged by fire . . . but not to such an extent as to render the same untenantable, the Landlord shall restore the Premises within seventy-five (75) days and there shall be no abatement of rent." (*Id.* 18). Second, the section states that should the premises become "partially damaged" by fire such that they are "untenantable," the landlord "shall restore said Premises as promptly as possible and the rent shall abate proportionately to the untenantability of said Premises until the Premises are made fit for occupancy." (*Id.*). Finally, the lease states that, should the premises become "entirely untenantable" due to fire damage, the lease "shall thereupon become null and void and all liability of the Tenant shall terminate upon payment of all rent due and payable to the date of such damage." (*Id.*).[4]

Jumpy Bounce filed a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment, with respect to Hartford Fire's negligence claim. According to Jumpy Bounce, the lease terms detailed above preclude the subrogation action. (Mot. to Dismiss Compl., ECF No. 14). Hartford Fire responded, (Resp. in Opp'n to Mot. to Dismiss Compl., ECF No. 15), and Jumpy Bounce replied, (Reply, Mot. to Dismiss Compl., ECF No. 17).

B.  Ninja Jump

Hartford Fire also brings three claims against Ninja Jump. First, it claims a defect in the motor caused the fire and resulting losses and that Ninja Jump is liable, because Ninja Jump "designed, manufactured, assembled, and/or distributed the blower motor." (Compl. ¶¶ 24–29). It

---

[4] Although not mentioned by Jumpy Bounce, the lease also states, "This agreement contains the full and final and exclusive agreement among the parties with respect to the subject matter herein. There are not other oral agreements or representations between the parties that are not incorporated herein." (*Id.* 26).

also claims Ninja Jump is liable for breach of warranty and failure to exercise reasonable care with respect to the design, manufacture, assembly, and distribution of the blower motor. (*Id.* ¶¶ 30–37). Ninja Jump has filed an Answer, which includes a variety of affirmative defenses. (Ninja Jump Answer, ECF No. 6). Ninja Jump also has filed a crossclaim against Jumpy Bounce, claiming it is entitled to indemnification from Jumpy Bounce. Alternatively, if Ninja Jump is determined to be liable, it claims that Jumpy Bounce was also negligent and must contribute to any damages awarded to Hartford Fire. (Crossclaim ¶¶ 6–11, ECF No. 16). Jumpy Bounce has moved to dismiss Ninja Jump's crossclaim, (Mot. to Dismiss Crossclaim, ECF No. 18), Ninja Jump responded, (Resp. in Opp'n to Mot. to Dismiss Crossclaim, ECF No. 21), and Jumpy Bounce replied, (Reply, Mot. to Dismiss Crossclaim, ECF No. 22).

## LEGAL STANDARD

When ruling on a motion under Fed. R. Civ. P. 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough

to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In considering a Rule 12(b)(6) motion, the court may consider documents attached to a motion to dismiss in some instances. *See, e.g.*, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

## ANALYSIS

### A. Jumpy Bounce

Jumpy Bounce has filed a motion to dismiss or, in the alternative, for summary judgment, claiming that the lease between Jumpy Bounce and Martin precludes recovery here by Martin or her subrogee. The lease precludes recovery, Jumpy Bounce claims, because, "Jumpy Bounce and [Martin] agreed that [Martin's] insurance policy would be the sole source of funds to address such losses as those at issue." (Reply, Mot. to Dismiss Compl. 1–2). In response, Hartford Fire claims the motion must be treated as one for summary judgment, because Jumpy Bounce "has introduced extrinsic evidence – the lease – which Plaintiff neither pled nor attached to the complaint." (Resp. in Opp'n to Mot. to Dismiss Compl. Mem. Law 5, ECF No. 15-2). A summary judgment ruling would be premature, Hartford Fire continues, because "the parties' reasonable expectations cannot be divined from the face of the lease," so Hartford Fire "must

have the leeway to take discovery on the question of what the parties' expectations were when they entered the lease." (*Id.* 6). Hartford Fire suggests it will seek to depose Jumpy Bounce's agents or employees. (Resp. in Opp'n to Mot to Dismiss Compl., Ex. 4, Certification of Christopher Konzelmann 2, ECF No. 15-4).

The first issue is whether the court should consider the lease – which Jumpy Bounce attached to its motion to dismiss – even though it was not attached to Hartford Fire's complaint. As a general matter, when a defendant appends extraneous materials to a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment, the court may either accept and rely on the extraneous materials – and thus convert the motion into one for summary judgment – or not consider the materials and rule on the 12(b)(6) motion. *See, e.g.*, *Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012). However, a limited exception applies, under which a court may consider an extraneous document attached to a motion to dismiss without converting the motion to one for summary judgment if the document "was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166; *see Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (court may consider document attached to motion to dismiss if the document "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity") (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Am. Chiropractic*, 367 F.3d at 234 (internal quotation marks and bracket omitted) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114

F.3d 1410, 1426 (3d Cir. 1997)). An "integral" document is one that by its "very existence, and *not the mere information it contains*, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original); *see also Goines*, 822 F.3d at 166 (suggesting an attached document may be "integral" if the plaintiff's claims "turn on" or are "otherwise based on" the contents of that document). A document is not necessarily "integral" just because it is referenced or quoted in the complaint. *See Goines*, 822 F.3d at 166.

Here, Hartford Fire has not disputed the authenticity of the lease attached to Jumpy Bounce's motion to dismiss. Hartford Fire also had notice of the lease, as evidenced by the fact that Hartford Fire referenced the lease (and its amendments) in its complaint several times. (*See* Compl. ¶¶ 7, 20–21). Finally, the lease is "integral" to the complaint: the lease creates the landlord–tenant relationship at the center of this claim, which in turn allegedly gives rise to a duty of care and liability for negligently caused damages. As Hartford Fire states in its complaint, Jumpy Bounce "owed a duty to exercise due and reasonable care while leasing the building." (Compl. ¶ 21). Put differently, the "very existence" of the lease gives rise to the legal rights asserted against Jumpy Bounce, and it is "integral" for that reason. *See Bourgeois v. Live Nation Entm't, Inc.*, 3 F. Supp. 3d 423, 436 (D. Md. 2014), *as corrected* (Mar. 20, 2014) (documents setting out contractual relationship between plaintiff and defendants are "integral" to complaint alleging defendant engaged in fraud and/or misrepresentation with respect to ticket sales occurring under terms of that contract); *see also Pawtucket Mut. Ins. Co. v. Oriental Station Rest., Inc.*, 2007 WL 791324, at *1 n.1 (D. Vt. Mar. 14, 2007) (lease is "integral" to complaint in subrogation action brought by insurance company alleging negligence and breach of contract).

Accordingly, the court will consider the lease at the 12(b)(6) stage.

With respect to the merits, the court applies the Maryland Court of Appeals decision in *Rausch v. Allstate Ins. Co.*, 388 Md. 690 (2005), when determining whether to grant the motion to dismiss. In *Rausch*, the Court of Appeals endorsed a "case-by-case" approach for determining whether a tenant is liable to a landlord's insurer in a subrogation action. Under this approach, liability is determined by the reasonable expectations of the parties to the lease. In particular, a subrogation claim is allowed "if it was reasonably anticipated by the landlord and the tenant that the tenant would be liable, in the event of a fire loss paid by the landlord's insurer, to a subrogation claim by the insurer." *Id.* at 717.

The key question raised by this dispute is how the court should determine the reasonable expectations of the parties to the lease and, in particular, whether the court should allow the parties to engage in discovery before determining those expectations. Jumpy Bounce urges the court to focus exclusively on the lease; extrinsic evidence is irrelevant, it claims, unless the court first concludes the meaning of a relevant part of the lease is ambiguous. Because Hartford Fire has not identified ambiguities, discovery is irrelevant, and the court must decide reasonable expectations based solely on the lease, it claims. (Reply, Mot. to Dismiss Compl. 4–8). Hartford Fire, by contrast, claims it "must have the leeway to take discovery on the question of what the parties' expectations were when they entered the lease," because those expectations "cannot be divined from the face of the lease." (Resp. in Opp'n to Mot. to Dismiss Compl. 5–6).

In *Rausch*, the Court of Appeals made clear that evidence outside the four corners of the lease may be relevant in some cases. Most generally, it clarified that a tenant's liability to the landlord's insurer depends on the reasonable expectations of the parties to the lease, "as

determined from the lease itself and any other admissible evidence." *Rausch*, 388 Md. at 713. On the other hand, the Court of Appeals also outlined four principles that "control" the case-by-case analysis, and these principles suggest that, in some cases, a subrogation claim may be precluded by the lease terms. For instance, the second principle states that, if a lease relieves a tenant of liability for fire loss, "there can be no subrogation claim against the tenant." *Id.* at 716. Especially relevant here, the third principle states that, absent some "compelling provision to the contrary," a court "may properly conclude" that a subrogation claim is precluded "[i]f, under the lease or by some other commitment, the landlord has communicated to the tenant an express or implied agreement to maintain fire insurance on the leased premises." *Id.* at 716.

Based on the lease terms, the court concludes Martin communicated to Jumpy Bounce an "implied agreement" to maintain fire insurance on the leased premises. Most significantly, the lease required Jumpy Bounce to pay its "proportionate share" of the leased property's annual expenses for "Landlord's property insurance" and included detailed provisions estimating payments and explaining how overpayments or underpayments would be handled. Although the lease does not explicitly state that such property insurance would cover loss due to fire, general property insurance coverage anticipates fire coverage in particular. *See id.* at 695–96 (lease provision prohibiting tenants from doing anything that would contravene "any hazard insurance policy" in force or which would increase such a policy's premium "anticipated that the owner would likely have a fire insurance policy of his own in force"). And the fact that the lease requires Jumpy Bounce to pay its share of the landlord's property insurance premiums suggests the insurance procured by Martin is for its benefit too and would relieve Jumpy Bounce of the responsibility to pay for damages caused by its own negligence. *Compare Travelers Indem. Co.*

*of Am. v. Deguise*, 180 Vt. 214, 217 (2006) (provision stating only that tenant "shall not undertake . . . any hazardous acts or do anything that will increase the development's insurance premiums" would not lead tenants "to expect that the presence of insurance would relieve them of their responsibility to pay for damages caused by their negligence"), *with Underwriters of Lloyds of London v. Cape Publ'ns, Inc.*, 63 So. 3d 892, 896 (Fla. Dist. Ct. App. 2011) (precluding subrogation action because lease provided building owner would secure property and casualty insurance policy, which covered fire damage, and tenant's rent included a pro rata share of the insurance premium).

The fire insurance lease provisions are also consistent with the conclusion that the lease communicates an implied commitment from Martin to maintain fire insurance. Under the fire insurance section of the lease, Jumpy Bounce agreed "to do nothing to contravene the policy or policies of fire insurance by the Landlord" or to increase those fire insurance policy rates – suggesting the landlord would maintain fire insurance in particular.[5] Similarly, the fire insurance section also provides that Jumpy Bounce would be required to pay any increase in the fire insurance premium for which it was responsible, which anticipates that Martin will maintain fire insurance in the first place. *See U.S. Fire Ins. Co. v. Phil-Mar Corp.*, 166 Ohio St. 85, 88–89 (1956) (denying subrogation claim partly because lease provided that tenant would pay increases in landlord's fire insurance premiums due to tenant's activities and suggesting this provision, in context, "contemplated that the lessor would carry insurance on the property and look to the insurance for compensation for any loss by fire"). Other provisions of the lease further support the conclusion that the lease communicates an implied agreement by Martin to maintain fire insurance. For instance, the lease appears to exclude Jumpy Bounce from liability in the event of

---

[5] Hartford Fire does not really contest this point: it concedes that the lease "indicates that Plaintiff's subrogor will obtain fire insurance on the property." (Resp. in Opp'n to Mot. to Dismiss Compl. 6).

severe fire damage. (*See* Lease Agreement 18). Finally, Hartford Fire does not appear to dispute that Martin did, in fact, procure insurance that covered fire damage, (*see* compl. ¶¶ 15–18), which further supports the court's conclusion. *Cf. Am. Family Mut. Ins. Co. v. Auto-Owners Ins. Co.*, 757 N.W.2d 584, 594 (S.D. 2008) ("The fact that the tenants purchased an insurance policy that provided fire coverage indicates that they reasonably anticipated that they could be liable for any loss resulting from a fire.").

Accordingly, the court will grant the motion to dismiss filed by Jumpy Bounce.

B. Ninja Jump

Jumpy Bounce also has moved to dismiss Ninja Jump's crossclaim under Rule 12(b)(6). According to Jumpy Bounce, the fact that Hartford Fire's subrogation claim is precluded means that Ninja Jump's crossclaims against Jumpy Bounce for contribution and common law indemnification fail as a matter of law. (Mot. to Dismiss Crossclaim Mem. Law 5, ECF No. 18-1). Jumpy Bounce also claims that the common law indemnification claim fails, because, if Ninja Jump were liable, it could only be liable as an "active tortfeasor." (*Id.* 10–11).

Regarding contribution, the Maryland Uniform Contribution Among Joint Tort-Feasors Act ("UCATA") provides for a "right of contribution . . . among joint tort-feasors," where "joint tort-feasors" means "two or more persons jointly or severally liable in tort for the same injury to person or property." Md. Code Ann., Cts. & Jud. Proc. §§ 3-1401, 3-1402. A "joint tort-feasor" must be "legally responsible to the plaintiff for his or her injuries," because "contribution under the UCATA . . . is predicated on a wrongdoer's direct liability to the plaintiff." *Montgomery Cnty. v. Valk Mfg. Co.*, 317 Md. 185, 199–200 (1989). For instance, no claim to contribution exists where an alleged "joint tort-feasor" cannot be held liable in the underlying suit due to

certain immunities or the defense of contributory negligence. *See id.* at 192–95, 199. One exception to this general rule relates to the statute of limitations defense. Maryland courts "have drawn a deliberate distinction between defenses based on immunities and statutes of limitation," such that an alleged "joint tort-feasor" is subject to a contribution claim if direct liability to the plaintiff is only barred by a statute of limitations defense. *Kelly v. Full Wood Foods, Inc.*, 111 F. Supp. 2d 712, 715 (D. Md. 2000) (citing *Jacobs v. Flynn*, 131 Md. App. 342, 374 (2000)). The Court of Appeals has suggested that the statute of limitations defense is distinct, because that defense does not "arise out of the wrongdoing itself" but rather "depends on litigation procedures transpiring after the wrongdoing has occurred." *Id.* (quoting *Valk*, 317 Md. at 198 n.16).

Here, the lease negotiated by Martin and Jumpy Bounce precludes Hartford Fire's subrogation claim against Jumpy Bounce. Liability never arose in the first instance, because Jumpy Bounce and Martin agreed that Martin would not hold Jumpy Bounce liable in the event of negligently caused fire damage. Because Hartford Fire has no right of action against Jumpy Bounce, Ninja Jump's contribution claim against Jumpy Bounce is necessarily precluded.[6]

With respect to indemnity, Ninja Jump claims it is entitled to "Common Law Indemnity." (Crossclaim 2). Although not expressly stated in its crossclaim, Ninja Jump appears to seek indemnity on a tort-based theory of implied indemnification: it does not allege an express or implied contractual indemnification, and its crossclaim alleges Ninja Jump is entitled to indemnity, because Hartford Fire's damages were caused by Jumpy Bounce's negligence. (*Id.*). Jumpy Bounce also interprets Ninja Jump's claim as one of implied tort indemnity, and Ninja

---

[6] Citing no case law, Ninja Jump urges the court to craft a new exception to the general rule that a contribution claim fails unless the party from whom contribution is sought is legally liable to the plaintiff in the underlying suit. In its view, Ninja Jump's right to contribution should not be extinguished by "a defense to liability established in a private contract between the plaintiff and a joint tortfeasor." (Resp. in Opp'n to Mot. to Dismiss Crossclaim 3–4). The court sees no basis in Maryland law to create such an exception and declines to do so here.

Jump did not dispel this view in its opposition to Jumpy Bounce's motion to dismiss. (*See* Resp. in Opp'n to Mot. to Dismiss Crossclaim 4–5). A claim of common law tort indemnification fails if the party from which a third-party plaintiff seeks indemnification is not liable to the plaintiff in the underlying suit. *Erson v. Int'l Special Attractions, Ltd.*, 2014 WL 3055554, at *7 (D. Md. July 1, 2014) (quoting *Heritage Harbour, LLC v. John J. Reynolds, Inc.*, 143 Md. App. 698, 706 (2002);[7] *see also Int'l Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.*, 838 F.2d 124, 127 (4th Cir. 1988) (a tort-based right to indemnification exists "when there is a great disparity in the fault of two tortfeasors, and one tortfeasor has paid for a loss that was primarily the responsibility of the other.") (quoting *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986)). As discussed, Jumpy Bounce is not liable to Hartford Fire. Accordingly, Ninja Jump cannot prevail on its indemnification claim, and the court will grant Jumpy Bounce's motion to dismiss for failure to state a claim.

## CONCLUSION

For the aforementioned reasons, the court will grant Jumpy Bounce's motion to dismiss Hartford Fire's claims against it, with prejudice. The court also will grant Jumpy Bounce's motion to dismiss Ninja Jump's crossclaim for common law indemnity and contribution, with prejudice. A separate order follows.


May 30, 2017                                      _____/S/_____
Date                                             Catherine C. Blake
                                                 United States District Judge

---

[7] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.